UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARTIN JOHNSON and JANE DOE,
on behalf of themselves and all others
similarly situated,
      *Plaintiffs*,


    v.
                           Case No. 3:21-cv-1214 (CSH)
                                   September 26, 2023

FRANK KENDALL, Secretary of the
Air Force,
      *Defendant*.

## RULING ON CLASS CERTIFICATION AND
## PRELIMINARY RULING ON PROPOSED SETTLEMENT

**HAIGHT, Senior District Judge:**

This is a nation-wide class action under the Administrative Procedure Act, 5 U.S.C. § 706; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and its implementing regulations; and the Fifth Amendment Due Process Clause. The action is brought on behalf of certain U.S. Air Force veterans against the Defendant Secretary of the Air Force, and follows two similar class actions brought against the Secretaries of the Army and Navy, which were both resolved by settlement. *See generally Manker v. Del Toro*, No. 3:18-cv-372 (CSH); *Kennedy v. McCarthy*, No. 3:16-cv-2010 (CSH). This action, like its predecessors, alleges that servicemembers suffering from traumatic brain injuries, post-traumatic stress disorder, and military sexual trauma improperly received less-than-Honorable discharges from the military and were denied the opportunity to have those discharges fairly reviewed on appeal, resulting in adverse economic, medical, social, and emotional consequences for those servicemembers. *See* Doc. 92 at 1.

Under the capable supervision of Magistrate Judge Robert M. Spector, the parties have arrived at a settlement of this action, evidenced by a Stipulation and Agreement of Settlement [Doc. 92-1]. The Federal Rules of Civil Procedure require the Court's approval of the settlement of a class action such as this one. *See* Fed. R. Civ. P. 23(e). The parties move jointly for preliminary approval of the proposed settlement and approval of a notice to class members in the form submitted with the motion. *See* Doc. 92.

Additionally, the parties jointly move to certify a stipulated class consisting of certain members and former members of the U.S. Air Force, Space Force, Air Force Reserve, and Air National Guard substantially similar to the class proposed in Plaintiffs' earlier Motion for Class Certification [Doc. 2-1]. *See* Doc. 92.

This Ruling, together with a concurrently filed Supplemental Order, resolves the pending Joint Motion for Settlement Class Certification and Preliminary Settlement Approval [Doc. 92].

## I. CLASS CERTIFICATION

The parties have stipulated to the following definition of a settlement class:

[M]embers and former members of the Air Force, Space Force, Air Force Reserve, and Air National Guard who served in the military during the Iraq and Afghanistan eras, defined as those with discharge dates from October 7, 2001, through the Effective Date of Settlement, and who:
(1) were discharged from the Air Force, Space Force, Air Force Reserve, or Air National Guard with the following service characterizations: Under Honorable Conditions (General), or Under Other Than Honorable Conditions (UOTHC); but not the following service characterizations: Bad Conduct Discharges (BCDs), Dishonorable discharges, Uncharacterized discharges, or Dismissals;
(2) who, if they submitted a previous discharge upgrade application or application for reconsideration, submitted at least one such application on or after September 13, 2006;
(3) have not received upgrades of their discharge characterizations to Honorable; and

2

(4) have diagnoses of post-traumatic stress disorder (PTSD), Traumatic Brain Injury (TBI), or other mental health conditions, or have experiences of sexual assault or sexual harassment, or records documenting that one or more symptoms of PTSD, TBI, other mental health conditions, or experiences of sexual assault or sexual harassment existed during military service, under the Kurta Memo[1] standard of liberal consideration.

Doc. 94 at 12. The parties seek certification of this class under Rule 23(b)(2) of the Federal Rules of Civil Procedure. *See id.* at 33. The Court's analysis will therefore mirror that in the prior actions against the Army and Navy, in which similar classes were certified. *See, e.g.*, *Manker v. Spencer*, 329 F.R.D. 110, 116 (D. Conn. 2018).

## A. Standard of Review

"The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010). The Court may "accept the complaint allegations as true in a class certification motion." *Shelter Realty Corp. v. Allied Maint. Corp.*, 574 F.2d 656, 661 n.15 (2d Cir. 1978).

Although the parties here have stipulated to a proposed class, "a district court may only certify a class if it 'is satisfied, after a rigorous analysis,' that the requirements of Rule 23 are met." *In re Am. Int'l Grp., Inc. Sec. Litig.,* 689 F.3d 229, 237–38 (2d Cir. 2012) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011)). However, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in applying it.

---

[1] The "Kurta Memo" refers to Anthony M. Kurta, Off. of the Under Sec'y of Def., Mem. for Secretaries of the Mil. Dep'ts (Aug. 25, 2017). The "Wilkie Memo" refers to Robert L. Wilkie, Off. of the Under Sec'y of Def., Mem. for Secretaries of the Mil. Dep'ts (July 25, 2018) (providing additional guidance).

*Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) (internal citation omitted). "In determining whether class certification is appropriate, a district court must first ascertain whether the claims meet the preconditions of Rule 23(a) of numerosity, commonality, typicality, and adequacy." *Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201–02 (2d Cir. 2008).

A court must then determine whether one of three conditions listed under Rule 23(b) is met. Fed. R. Civ. P. 23(b). Plaintiffs seek certification under Rule 23(b)(2), Doc. 94 at 33, which applies where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(3). "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360–61.

### B. Factual Background

The following is derived from Plaintiffs' complaint [Doc. 1], allegations of which are taken as true for purposes of deciding the class certification.

Upon discharge, military personnel receive a certification characterizing their service, e.g., "Honorable" or "Dishonorable," which affects their eligibility for veterans' benefits and services. Compl. ¶¶ 16–18. Veterans may apply to a review board, such as the Air Force Discharge Review Board ("AFDRB"), to upgrade their discharge characterization. *Id.* ¶ 19. In 2014, then-Secretary of Defense Chuck Hagel instructed the AFDRB and other boards to give "special" or "liberal" consideration to applications from veterans diagnosed with post-traumatic stress disorder

4

("PTSD") and to consider PTSD and PTSD-related conditions as "potential mitigating factors in the misconduct that caused" a lesser characterization than "Honorable." *Id.* ¶¶ 20–21; *see also* Doc. 1-1 ("Hagel Memo"). Congress codified the "liberal consideration" policy in 2016. *See* 10 U.S.C. § 1553(d)(3)(A)(ii) (2016); Compl. ¶ 22.

Notwithstanding the policy change, between January 2017 and December 2019, the AFDRB issued denials in 72 percent of cases in which PTSD, TBI, or other mental health conditions were alleged to have been a factor. *Id.* ¶¶ 114, 127. The AFDRB also issued denials to 60 percent of those seeking upgrades in connection with experiences of military sexual trauma (MST), defined as sexual assault or harassment experienced during service. *Id.* Plaintiffs allege that the AFDRB inconsistently applies the policy as first set forth by the Hagel Memo, often without sufficient explanations to back up its decisions denying an upgrade. *Id.* ¶¶ 129–39. Moreover, the AFDRB fails to timely publish or publish at all these decisions despite legal obligations to make this information public. *Id.* ¶¶ 141–43. The lack of clear precedent, in terms of both quality and quantity, causes confusion about the AFDRB's standards for upgrading characterizations. *Id.* ¶ 142. These practices have continued despite the filing and settlement of actions against the Army and Navy alleging substantially identical practices by those branches' review boards. *Id.* ¶ 143.

In the case at bar, named plaintiff Jane Doe enlisted in the Air Force in 2013. *Id.* ¶ 37. She was the victim of rape by a fellow airman in 2014, and the victim of physical, emotional, and sexual abuse by her boyfriend, another airman, in 2015. *Id.* ¶¶ 40–48. Doe's job performance suffered as a result of her MST and her mental health symptoms, which were later diagnosed as PTSD. *Id.* ¶ 50. Doe received reprimands for a series of relatively minor infractions, including arriving late to duty, failing to document maintenance, seeing her boyfriend in violation of a protective

order, and failing a physical fitness test, prompting her Commander to order her to undergo a mental health evaluation, which recommended that she be discharged. *Id.* ¶¶ 50–53. Doe was ultimately discharged in 2016 with a status of "General (Under Honorable Conditions)." *Id.* ¶ 54. This status made Doe ineligible for education benefits under the GI Bill. *Id.* ¶ 61.

In August 2020, Doe applied to the AFDRB for an upgrade of her discharge status to Honorable, presenting the testimony of a psychiatrist regarding Doe's PTSD diagnosis, as well Doe's own testimony and documentary evidence. *Id.* ¶ 62–63. On December 28, 2020, the AFDRB denied Doe's application in unindividualized, boilerplate language. *Id.* ¶¶ 65–70.

The other named plaintiff, Martin Johnson, enlisted in the Air Force in 2005 and was deployed to Iraq in 2007. *Id.* ¶¶ 72, 77. During Johnson's first week in Iraq, a bomb exploded near him, causing him to struggle, to this day, with being near fireworks or other loud explosions. *Id.* ¶ 78. After returning from his seven-month tour, Johnson discovered that his wife was having an extramarital affair. *Id.* ¶¶ 79–80. Shortly thereafter, Johnson received a citation for failing to pay his military credit card bill and keep his lawn mowed, and a subsequent reprimand for failing to keep his house clean. *Id.* ¶¶ 81–82. In 2009, Johnson was discharged with a "General (Under Honorable Conditions)" discharge due to a "pattern of misconduct consisting solely of minor disciplinary infractions." *Id.* ¶ 87.

Since his discharge, Johnson has been diagnosed by a psychologist at the U.S. Department of Veterans Affairs with recurrent major depressive disorder, social anxiety disorder, PTSD, and other trauma, all of which are the result of events that occurred during his service. *Id.* ¶ 89. Johnson applied to the AFDRB for an upgrade of his discharge status to Honorable, presenting substantial documentary and testimonial evidence demonstrating that his minor misconduct was attributable

to trauma during his service. *Id.* ¶ 95. On May 18, 2021, the AFDRB denied Johnson's application, again using unindividualized, boilerplate language. *Id.* ¶¶ 96–99.

Plaintiffs bring this action against Defendant Frank Kendall, in his official capacity as United States Secretary of the Air Force, to challenge the AFDRB's characterization upgrade decision-making procedures, which are allegedly in violation of the Administrative Procedure Act, 5 U.S.C. § 706; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and its implementing regulations; and the Fifth Amendment Due Process Clause. *Id.* ¶¶ 10, 15.

## C. Discussion

Rule 23(a) of the Federal Rules of Civil Procedure sets forth the conditions, all of which must be met, to certify a class: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). The Court will examine each of these requirements in detail, and then, if satisfied, proceed with a Rule 23(b) analysis.

### 1. Numerosity

The first factor for class certification is numerosity, which refers to the requirement that the proposed class of plaintiffs be so large that joinder is "impracticable." Fed. R. Civ. P. 23(a)(1). *See also Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Medco Managed Care, L.L.C.*, 504 F.3d 229, 244–45 (2d. Cir. 2007) ("The numerosity requirement in Rule 23(a)(1) does not mandate that joinder of all parties be impossible—only that the difficulty or

inconvenience of joining all members of the class make use of the class action inappropriate."). "Numerosity is presumed for classes larger than forty members." *Pennsylvania Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co., Inc.*, 772 F.3d 111, 120 (2d Cir. 2014) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)).

Defendant has stipulated to the proposed class. Doc. 94 at 15. However, it is the Plaintiffs' affirmative burden to demonstrate all class action factors, and so the Court will examine Plaintiffs' arguments. *See Dukes*, 564 U.S. at 350. Plaintiffs estimate that the AFDRB has denied applications from approximately 11,755 Iraq- and Afghanistan-era Air Force veterans with demonstrated mental health conditions or experiences of sexual assault or harassment. Pl. Mem. at 17.

The Second Circuit presumption for numerosity has been met, as it was in *Manker*, where I commented that "[e]ven if the [Naval Discharge Review Board] denied 85 percent of only a hundred PTSD-affected Navy and Marine Corps veterans' applications, there would be at least eighty-five applicants who may have a claim." 329 F.R.D. at 117 (citing *Penn. Pub. Sch. Emps.' Ret. Sys.*, 772 F.3d at 120 (holding that forty members meets the presumption for numerosity)). Here, as in *Manker* and *Spencer*, joinder would likely be burdensome and impracticable.

### 2. Commonality

The commonality prong asks whether "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 564 U.S. at 349–50 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). This requirement goes beyond having "suffered a violation of the same provision of law." *Dukes*, 564 U.S. at 350. Rather, the claims of the class "must

depend upon a common contention . . . of such nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* What matters is "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.*

As Plaintiffs point out, "for the purposes of Rule 23(a)(2), [e]ven a single [common] question will do." Pls. Mem. at 19 (quoting *Dukes*, 564 U.S. at 359 (internal quotation marks omitted)). Nonetheless, Plaintiffs offer eight potential common questions. Pls. Mem. at 19–21. These questions concern, in brief, whether Defendant acted arbitrarily and capriciously without supporting evidence, frustrated class members' ability to prepare successful applications by failing to publish or explain the evidentiary standards in effect, failed to maintain important records, improperly practiced a policy of presuming regularity in government affairs, failed to carry out congressional intent in establishing the Discharge Review Boards, produced decisions unsupported by substantial evidence, discriminated against class members on the basis of their disabilities, and demonstrated a systemic institutional bias against class members. *Id.*

The Court accordingly turns to whether resolving Plaintiffs' proposed common questions will result in common answers that are "central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. That appears to be so. Plaintiffs' questions challenge the AFDRB's procedures and standards in place when evaluating applications from PTSD-affected veterans. This approach strikingly echoes the Supreme Court's approval of one judicial approach to the commonality issue: "if the employer 'used a biased testing procedure to evaluate both applicants for employment and incumbent employees, a class action on behalf of every applicant or employee who might have been prejudiced by the test clearly would satisfy the commonality and

typicality requirements of Rule 23(a).'" *Dukes*, 564 U.S. at 353 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 159 n.15 (1982)).

For example, one of Plaintiffs' allegations is that the AFDRB presumed regularity in government affairs, which biased the proposed class because of the "widespread racial disparities and systemic irregularities in mental health treatment and administrative separation processes within the Air Force." Pl. Mem. at 20. Finding common answers to Plaintiffs' questions would consequently aid resolution of class members' claims "in one stroke," e.g., by helping to determine whether the AFDRB's adjudication process under presumed regularity indeed disadvantaged them because they were entitled to a more generous standard. *See Dukes*, 564 U.S. at 350.

In *Manker*, the defendant objected to class certification in part on the grounds "that there are varying due process rights that apply to the different ways a service member can separate from the Navy or Marine Corps[,]" and that claims concerning other adjudicatory boards, such as an administrative separation board or a board of inquiry, should not be encompassed by the proposed class there. 329 F.R.D. at 119. Plaintiffs in *Manker* did not argue the point, and the class was accordingly narrowed to apply solely to the Naval Discharge Review Board, in order "to avoid a blanket inclusion of those denied upgrades to Honorable from all Navy records-correction boards." *Id.* at 119–20. No such concerns have been raised here, and so the Court will not *sua sponte* narrow the proposed class as it did in *Manker*.

The proposed class of members fulfills the requirements of the commonality prong. The members share the "same injury" of being subject to the AFDRB's purportedly unfair review process for characterization upgrade applications. A single lawsuit on their behalf would answer the

questions raised by Plaintiffs, and likely other questions, common to all members' individual claims, and would conclude with a result appropriate for all members.

### 3. Typicality

Typicality is similar to commonality and asks if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

As with commonality, typicality helps determine "whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon*, 457 U.S. at 157 n.13. "Typicality requires that the disputed issue[s] of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Mazzei v. Money Store*, 829 F.3d 260, 272 (2d Cir. 2016); *see also Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) ("[T]ypicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.").

The "mere fact that an aggrieved private plaintiff is a member of an identifiable class of persons . . . is insufficient to establish his standing to litigate on their behalf all possible claims of discrimination against a common employer." *Falcon*, 457 U.S. at 159 n.15 (discussing a class action brought by a Mexican-American employee against employer for racially discriminatory hiring and promoting practices). A plaintiff must show more for a court to infer that his or her

treatment was typical of the defendant's practices. *Id.* at 158. "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux*, 987 F.2d at 936–37.

Plaintiffs present two veterans' experiences as representative of the AFDRB's general treatment of discharge upgrade applications from those with PTSD, TBI, MST, or PTSD-related conditions. Named Plaintiff Doe presented evidence to the AFDRB of her diagnosis with PTSD, but the AFDRB's rejection of her application purportedly failed to apply the "liberal consideration" standard. Compl. ¶¶ 62, 67. Named Plaintiff Johnson also developed PTSD and other mental health conditions during his military service, but was similarly denied an upgrade from the AFDRB. *Id.* ¶¶ 96–97.

The Court has examined the AFDRB "Discharge Review of Decisional Document[s]" for Doe and Johnson. Docs. 1-4, 1-5. It is arguably unclear from the AFDRB's explanation of their denials what standard is being used and under what circumstances PTSD would mitigate misconduct. For example, with respect to Doe, the AFDRB "found no conclusive indication that any mental health issues had a direct impact on the applicant's misconduct or discharge[,]" Doc. 1-4 at 3, despite what Plaintiffs allege was evidence to the contrary, Compl. ¶¶ 50–63. Similarly, with respect to Johnson, the AFDRB found "no evidence or records to indicate that the applicant's condition was so severe as to mitigate his entire service career of misconduct[,]" Doc. 1-5 at 4, although that misconduct was expressly described by the Air Force at the time of Johnson's discharge as "consisting solely of minor disciplinary infractions," Compl. ¶ 87.

Along with other similarities between Doe's and Johnson's experiences, this suggests that the AFDRB may have used the same standard to decide on applications for certification upgrades, but it was likely not the "liberal consideration" standard that Plaintiffs allege should have been used. This is also the chief contention of this class action suit. Doe and Johnson both allegedly suffered the same injury of having been subject to the AFDRB's usage of an incorrect standard, which is also the injury that they allege applies to proposed class members. Resolution of their claims would seem to resolve class members' claims because all of the claims arise from the AFDRB's general policies and practices. *See Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993) (explaining the typicality requirement is met when named plaintiffs and the proposed class suffer from the same unlawful conduct). Hence, Plaintiffs' claims are typical of the class.

### *4. Fair and Adequate Representation*

The fourth and final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The rule "'serves to uncover conflicts of interest between named parties and the class they seek to represent,' as well as the 'competency and conflicts of class counsel.'" *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 231 (2d Cir. 2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625, 626 n.20 (1997)). "Adequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *In re Payment Card*, 827 F.3d at 231 (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)).

> To assure vigorous prosecution, courts consider whether the class representative has adequate incentive to pursue the class's claim, and whether some difference

13

> between the class representative and some class members might undermine that incentive. To avoid antagonistic interests, any fundamental conflict that goes to the very heart of the litigation must be addressed with a structural assurance of fair and adequate representation for the diverse groups and individuals among the plaintiffs.

*In re Payment Card*, 827 F.3d at 231 (2d Cir. 2016) (citations and internal quotation marks omitted). The Court should also consider whether the "plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000) (citing *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).

Here, the named Plaintiffs appear to have adequate incentive to pursue claims on behalf of the class, fulfilling the "vigorous prosecution" requirement. They seek fairer adjudication procedures, under which they believe they would qualify for certification upgrades. A change in procedures would benefit both Named Plaintiffs and proposed class members by affording them the assurance that their applications will be reviewed under the correct standards. S*ee Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 171 (2d Cir. 2001), abrogated on other grounds by *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) (explaining that the "vigorous prosecution" requirement is met when plaintiffs "stand to benefit from any class-wide injunctive relief that may be ordered").

As for the qualifications of counsel, the Court is satisfied. Plaintiffs' attorneys, Yale Law School's Veterans Legal Services Clinic and Jenner & Block LLP, have had significant experience litigating class actions, some on behalf of veterans, and litigating individual veterans' claims against military review boards—including in *Kennedy* and *Manker*. *See* 329 F.R.D. 110 at 122. The Court finds that Plaintiffs have adequately fulfilled the fair and adequate representation

14

requirement. Accordingly, Plaintiffs have met the prerequisites for class certification under Rule 23(a) of the Federal Rules of Civil Procedure.

### 5. *Rule 23(b)(2) Requirements*

The Court has concluded that the four requirements of Rule 23(a) are satisfied, and so it now turns to the requirements of Rule 23(b). Although Rule 23(b) allows for three different types of class actions, Plaintiffs seek class certification under only one of them: Rule 23(b)(2). Pls. Mem. at 15.

Rule 23(b)(2) allows for class certification if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant. Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Dukes*, 564 U.S. at 360–61. "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Id.* at 360 (internal citation omitted).

Plaintiffs ask the Court on behalf of the class to direct "measures sufficient to ensure that Defendant establishes constitutionally and statutorily compliant adjudication procedures, including, but not limited to, publication of secret policies, improved training of agency personnel, and

15

clarified evidentiary standards;" and "measures sufficient to ensure that Defendant meaningfully and consistently applies its own procedural standards in considering the effects of class members' PTSD, other mental health conditions, TBIs, and experiences of MST and [intimate partner violence] when determining whether to upgrade their discharge statuses[.]" Compl. at 45–46. Here, as in *Manker*, where the plaintiff class sought nearly identical relief, 329 F.R.D. at 123, the Court finds that Plaintiffs have met the threshold for a class action under Rule 23(b)(2).

For the foregoing reasons, the motion for class certification will be granted.

## II. Preliminary Settlement Approval

### A. Background

I turn now to the parties' joint motion for preliminary approval of their settlement.

On April 8, 2022, this case was referred to Magistrate Judge Spector to lead and assist the parties and their attorneys in negotiations for a possible settlement. *See* Doc. 39. Under Judge Spector's direction and supervision, counsel for the parties participated in a number of settlement conferences. The parties characterize these negotiations as "an arm's length process that involved multiple and lengthy negotiations over complex issues." Doc. 94 at 20. A settlement in principle was reached on September 6, 2022, and over the seven months that followed, attorneys for the parties—for Plaintiffs, Yale Law School's Veterans Legal Services Clinic and Jenner & Block LLP, and for Defendant, the U.S. Attorney's Office for the District of Connecticut—worked with their clients to finalize the proposed settlement. On April 24, 2023, the parties filed their joint motion for settlement class certification and preliminary settlement approval, with a correction made to a supporting document on August 2, 2023. *See* Doc. 99.

The parties have agreed upon the broad-form settlement discussed herein. As I did in *Manker*, I compliment counsel, and note once again that "this salutary result may be attributed in large measure to the energy, patience, and skill of Judge Spector." *Manker v. Del Toro*, No. 3:18-cv-372 (CSH), Doc. 215 at 3–4.

The parties move jointly for preliminary approval of the proposed settlement and approval of a notice to class members in the form submitted with the motion, *see* Doc. 92, as required by the Federal Rules of Civil Procedure, *see* Fed. R. Civ. P. 23(e).

## B. Legal Standard

This class action is governed by Rule 23 of the Federal Rules of Civil Procedure. Rule 23(e) provides: "The claims" of a "certified class" may be "settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Rule 23(e) "requires court approval of any settlement that effects the dismissal of a class action. Before such a settlement may be approved, the district court must determine that a class action settlement is fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138–39 (2d Cir. 2000) (citing *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995) and *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 22 (2d Cir.1987)).

## C. Discussion

The proposed settlement addresses the needs and circumstances of the member class, consisting of diverse groups of Air Force veterans of the Nation's most recent wars. The "Stipulation and Agreement of Settlement" divide the settlement class into three main categories, based on the timing and status of their applications to the AFDRB.

1. The "Automatic Reconsideration Class." The AFDRB will automatically reconsider decisions issued on applications by class members submitted on or after September 13, 2015 to the effective date of settlement, where the request for a full upgrade was denied and the denial was not based on the discharge date being more than fifteen years before the application date. See Doc. 92-1 ("Stipulation") ¶ IV.A. The Air Force will notify members of this group by mail and e-mail that the AFDRB will be automatically reconsidering their cases, and will provide them an opportunity to supplement their applications, including with medical evidence. *Id.*

2. The "Notice of Reapplication Rights" group. The AFDRB will mail a notice to class members who were discharged after October 6, 2001 and applied to the AFDRB between September 13, 2006 and September 12, 2015, and whose requests for a full upgrade were denied. The notice will include details on the process for applying for reconsideration.

3. The "Notice Inviting Additional Evidence" group. As a one-year trial program, for those who apply to the AFDRB after the effective date of settlement and claim to have PTSD, TBI, or other mental health conditions, or to have experienced MST, the AFDRB's medical professional will review the applicant's file. *Id.* ¶ V.E. "If the medical professional determines that there may be insufficient records to establish the mental health condition or experience, or that it existed/occurred in service, the medical professional will send a form notice, [inviting the submission of additional evidence], to the applicant." *Id.* The Air Force will report periodically to Plaintiff's counsel regarding the number of applicants who receive this notice, and the applicants' responses to the letter. *Id.*

More broadly, the Secretary further agrees to the following terms. First, the Air Force will

inform veterans of their rights to reapply and of potentially relevant resources through notices on its website, and in its communications with individual applicants. *Id.* ¶¶ IV.C–D. Second, it will require a greater degree of articulated, narrative reasoning in the explanations given by the AFDRB when it denies an application in liberal consideration cases. *Id.* ¶ IV.F.1. Third, it will require the AFDRB to append a medical opinion to its decisions, including a narrative explanation and disclosure of the qualifications of the mental health professional, in certain circumstances. *Id.* ¶ IV.F.2–3. Fourth, it agrees to require AFDRB members and staff to complete routine, mandatory training on issues of PTSD, MST, TBI, and other mental health conditions, as well as on the policy of liberal consideration. *Id.* ¶ IV.G. Fifth, it agrees to a trial program wherein applicants with questions for the AFDRB can have those questions answered by phone. *Id.* ¶ IV.H. Sixth, it agrees to continue to allow applicants to participate in AFDRB hearings by video-teleconference. *Id.* IV.I. Seventh, the Secretary acknowledges that the Kurta and Wilkie memoranda apply to the exercise of Secretarial Review Authority as detailed at 32 C.F.R. § 865.113, and that when the Secretary overturns a favorable AFDRB decision in a liberal consideration case, the Secretary's discussion of issues shall address each issue considered by the AFDRB, including the AFDRB's consideration of factors as outlined in the Kurta memorandum. *Id.* ¶ IV.J.

The Court will grant preliminary approval to the proposed settlement, which is the result of extensive arms-length negotiations between able and experienced attorneys, conducted under the supervision, and with the energetic participation of, a gifted Magistrate Judge, and which appears to have been informed by counsel's experiences in *Kennedy* and *Manker*. The most striking features of the proposed settlement are that it achieves the class action's principal purpose, the reform of the process by which the AFDRB considers discharge upgrade applications, and extends

that benefit to a wide universe of veterans. It should also be noted that this settlement, if finally approved by the Court, will be incorporated into and designated as part of an Order of the Court, subject to the Court's continuing jurisdiction. That is the procedure followed in both *Kennedy* and *Manker*. *See Kennedy v. Whitley*, No. 3:16-CV-2010 (CSH), 2021 WL 4533198 (D. Conn. Apr. 26, 2021); *Manker v. Del Toro*, No. 3:18-cv-372 (CSH), Doc. 215 at 6.

The Court will conduct a fairness hearing into whether this proposed settlement should be approved. Class members must be given notice about that hearing and its purpose. The parties submit with the present motion a proposed notice to class members which includes the proposed settlement, the date and place of the fairness hearing, and instructions about how class members can be heard, in favor of or opposition to the settlement. In substance and form, the proposed notice complies with governing case law.

Careful consideration must also be given to the distribution of the notice. This is a nation-wide class of affected veterans, probably numbering in the thousands, scattered throughout the country. The parties undertake to engage in elaborate methods of notification and distribution. The parties will publish the notice, the proposed settlement, and its exhibits in their respective websites. Stip. ¶¶ VI.C.1–2. They will issue a joint press release. *Id.* ¶ VI.C.3. Class counsel will engage with national and regional news media, request elected officials to share the class notice with colleagues and constituents, and distribute the notice and settlement to veterans' organizations, legal services providers, and advocates across the country. *Id.* ¶ VI.C.4. The Court approves these proposed methods of distribution as well. Proof of these efforts must be made to the Court in advance of the fairness hearing.

### III. CONCLUSION AND ORDERS

For the foregoing reasons, the parties' Joint Motion [Doc. 94] for class certification, pre-liminary approval of the proposed "Stipulation and Agreement of Settlement" [Doc. 92-1], and approval of the proposed Class Notice, is **GRANTED**. In accordance with Rule 23(c)(1) of the Federal Rules of Civil Procedure, the Court certifies the following class:

> Members and former members of the Air Force, Space Force, Air Force Reserve, and Air National Guard who served in the military during the Iraq and Afghanistan eras, defined as those with discharge dates from October 7, 2001 through the Effective Date of Settlement, and who:
>
> (1) were discharged from the Air Force, Space Force, Air Force Reserve, or Air National Guard with the following service characterizations: Under Honorable Conditions (General), or Under Other Than Honorable Conditions (UOTHC); but not the following service characterizations: Bad Conduct Discharges (BCDs), Dishonorable discharges, Uncharacterized discharges, or Dismissals;
>
> (2) who, if they submitted a previous discharge upgrade application or application for reconsideration, submitted at least one such application on or after September 13, 2006;
>
> (3) have not received upgrades of their service characterizations to Honorable; and
>
> (4) have diagnoses of post-traumatic stress disorder ("PTSD"), Traumatic Brain Injury ("TBI"), or other mental health conditions, or have experiences of sexual assault or sexual harassment, or records documenting that one or more symptoms of PTSD, TBI, other mental health conditions, or experiences of sexual assault or sexual harassment existed/occurred during military service, under the Kurta Memo standard of liberal consideration.

Doc. 92-2 at 2–3. The representatives of the class will be the Named Plaintiffs Doe and Johnson, and class counsel will be the Yale Law School's Veterans Legal Services Clinic and Jenner & Block LLP.

A fairness hearing will be scheduled for **December 4, 2023, at 10:00 a.m.**, via Zoom.

No later than **fourteen calendar days** after entry of this Ruling, the parties shall effectuate

a class notice as described in the Stipulation and Agreement of Settlement [Doc. 92-1].

Within **twenty-one calendar days** before the fairness hearing, any Class member who wishes to object to the fairness, reasonableness, or adequacy of this Settlement Agreement or the settlement contemplated herein must file with the Clerk of Court and serve on the parties a statement of objection setting forth the specific reason(s), if any, for the objection, including any legal support or evidence in support of the objection, grounds to support their status as a class member, and whether the class member intends to appear at the fairness hearing. The parties will have **fourteen days** following the objection period in which to submit answers to any objections that are filed. The notice to the Clerk of the Court shall be sent to: Clerk of the Court, U.S. District Court for the District of Connecticut, 141 Church Street, New Haven, CT 06510; and both envelope and letter shall state: "Attention: *Johnson v. Kendall*, Case No. 3:21-CV-1214 (CSH) (D. Conn.)." Copies shall also be served on counsel for the parties.

The governance of this case will be directed by this Ruling and the separate Supplemental Order, filed concurrently herewith.

It is SO ORDERED.

Dated at New Haven this 26th day of September 2023.

*/s/ Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge